UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ZACHARY C.,                                                    :
                    Plaintiff,                                 :
                                                               :
              v.                                               :        C.A. No. 25-282-PAS
                                                               :
FRANK BISIGNANO,                                               :
Commissioner of Social Security,                               :
                    Defendant.                                 :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court on consent pursuant to 28 U.S.C. § 636(c) is Plaintiff's

motion seeking reversal for further consideration of the determination of the Commissioner of

Social Security ("Commissioner") denying Plaintiff's claim.  ECF No. 11.  The Commissioner

has filed a counter motion.  ECF No. 13.

I.      **Background**

Plaintiff Zachary C, a "younger" individual, completed high school and obtained a

college certification in a culinary program.  Tr. 44.  After that, from 2012 through September 12,

2022, he worked consistently as a cook in various restaurants (most recently for approximately

four years for Sodexo) and once briefly as a tire technician.  Tr. 19, 80, 159, 162, 170-81, 206.

In September 2022, Plaintiff was fired from his cooking job for Sodexo due to "missing work,

calling out frequently" during a period when he was taking buprenorphine for opioid use disorder

but also actively using illicit methamphetamine ("meth").  Tr. 22, 45, 159, 469; see Tr. 440-

45("abusing crystal meth").  As his treating outpatient nurse practitioner at Butler Hospital

(Nurse James Pollard) noted, Plaintiff lied about his ongoing use of meth, avoided "tox screens,"

and was resistant to substance abuse treating recommendations despite knowing that his job was

at risk due to his many absences.  Tr. 432, 440-45.  At a pre-onset encounter during which

Plaintiff displayed significant mental abnormalities on examination, Nurse Pollard noted

Plaintiff's awareness that his severe mental health symptoms were triggered by substance use.

Tr. 437-38.

In January 2023, at a point when he told Nurse Pollard that he had become abstinent from

meth and other illicit substances, Tr. 452 ("abstinent since New Year's day"), Plaintiff filed an

application for Disability Insurance Benefits ("DIB") based on alleged mental impairments –

bipolar disorder I and II, depression, anxiety and severe post-traumatic stress disorder

("PTSD").[1]  Tr. 17, 66.  After this application was denied initially and on reconsideration based

on the finding that Plaintiff retained the ability to work as long as he was not using illicit

substances, an administrative law judge ("ALJ") weighed the evidence of record, including the

prior administrative findings of two non-examining expert psychologists (Drs. Pamela

Steadman-Wood and Michelle Olson) and the treating notes of the mental health counselor (Ms.

Violet Morin) and Nurse Pollard to find that Plaintiff is severely limited not only by depression,

anxiety, bipolar and trauma disorders but also by substance use disorder.  Tr. 17-31.  Including

substance use, the ALJ found that Plaintiff's mental limitations established disability because

they met a Listing, but that, without substance use, Plaintiff retained the $RFC^2$ to perform simple

tasks based on simple instructions in a routine work setting that only occasionally changes, with

---

[1] In connection with his application, Plaintiff made subjective statements about "body" and "joint" pain, Tr. 224-25; in addition, he had been successfully treated for wrist pain prior to the period in issue, Tr. 265-357, as well as cellulitis and asthma prior to and during the period in issue, Tr. 362, 382, 478.  Plaintiff has not challenged the ALJ's Step Two finding that these conditions either were not established or were non-severe during the period in issue.  Tr. 20-21.  They will not be discussed further.

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations[,]" taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

significant limits on social interaction and no time-pressured tasks.  Id.  In reliance on the testimony of a vocational expert ("VE"), the ALJ found that, with this RFC, Plaintiff could perform at least three exemplar jobs – commercial/institutional cleaner, housekeeping cleaner and floor waxer.  Id.  The record contains no medical opinions supportive of greater mental health limitations without substance use.

## II.    Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a

whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

## III.     Drug Addiction and Substance Use

Pertinent to this case is the provision of the Social Security Act that bars an award of benefits if "alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C.§ 423(d)(2)(C).  That is, if an individual impaired by active drug addiction and/or alcoholism is found to be disabled, he may not be awarded benefits unless there is also a secondary finding that the claimant would continue to be disabled if he stopped using drugs or alcohol; "we will determine whether [drug addiction and alcoholism] is 'material' to the finding that the claimant is disabled."  SSR 13-2p, Evaluating Cases Involving Drug Addiction and Alcoholism, 2013 WL 621536, at *2 (Feb. 20, 2013); see Paul H. v. Colvin, C.A. No. 24-00045PAS, 2025 WL 212166, at *1 (D.R.I. Jan. 16, 2025).

## IV.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

4

twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3

(D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim.  20 C.F.R. § 404.1520c(c)(1)-(2).  In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so.  Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025), adopted, 2025 WL 3283309 (D.R.I. Nov. 25, 2025).

An ALJ errs if she denies benefits in reliance on a non-examining expert who, despite expertise, did not consider post-file review portions of the medical record that support the claimed limitations.  Padilla v. Barnhart, 186 F. App'x 19, 21-23 (1st Cir. 2006) (per curiam); see Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018) ("That the state-agency physicians were not privy to parts of [claimant]'s medical record detracts from the weight that can be afforded their opinions.").  However, it is also well-settled that an ALJ may consider the post-file review evidence and rely on her common-sense finding that the pre- and post-review records are similar (or the post-file review record is more benign) so that state-agency opinions that analyze solely the earlier material nevertheless constitute substantial evidence.  See Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *6 (D.R.I. May 4, 2020), adopted by text order (D.R.I. June 5, 2020).  That is, a state-agency opinion is not irrelevant merely because the expert was not privy to updated medical records; to hold otherwise "would defy logic and be a formula for paralysis."  Id. (internal quotation marks omitted).  In making such a common-sense finding, an ALJ's examination of post-file review

mental status examination ("MSE") and similar clinical findings does not constitute an improper lay interpretation of complex medical data. Paul H. v. Colvin, C.A. No. 24-00045PAS, 2025 WL 212166, at *7 (D.R.I. Jan. 16, 2025). Weighing MSE clinical findings is "the province of the ALJ, and d[oes] not require the ALJ to interpret raw medical data or conduct a layperson's interpretation of medical jargon." Michael D. v. Berryhill, C.A. No. 18-00426-WES, 2019 WL 2537587, at *7-8 (D.R.I. June 20, 2019), adopted sub nom. Michael D. v. Saul, 2019 WL 3842865 (D.R.I. Aug. 15, 2019). When the post-file review MSE findings are consistent with or more benign than those seen by state agency experts, the expert's opinion may be relied on as substantial evidence. Id.

### C.    Claimant's Subjective Statements

In the absence of evidence that directly rebuts the claimant's testimony or presents some other reason to question its credibility, the ALJ must take the claimant's statements as true. Sacilowski, 959 F.3d at 441; Joseph R. v. Bisignano, C.A. No. 24-264-PAS, 2025 WL 2918368, at *10 (D.R.I. Oct. 14, 2025). Although the failure to articulate the reasons for discrediting subjective testimony requires that the testimony be accepted as true, Sacilowski, 959 F.3d at 441, the reviewing court should not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195.

## V.    Analysis

### A.    Challenges to ALJ's RFC Determinations

Plaintiff presents two reasons to challenge the ALJ's RFC findings. First, he contends that she wrongly relied on the findings of the non-examining expert psychologists who did not see the post-file-review portion of the medical record that was developed during a period of extended sobriety yet still reveals significant functional limitations. Second, he argues that the

7

ALJ improperly discounted his subjective statements based on nothing more than a vague reference to activities of daily living, yet the substantial evidence reflects only that Plaintiff's daily activities did not improve during periods of sobriety.  Both arguments fail for the reasons that follow.

1.    ALJ's Assessment of Post-File-Review Evidence

Plaintiff argues that the post-file review record (reflecting treatment with both Nurse Pollard at Butler and Ms. Morin of West Bay Psychiatric Associates) reflects that Plaintiff still had severely disabling mental health symptoms even though these records cover an "extended period of abstinence of substance abuse."  ECF No. 11 at 11 (emphasis added).  As the ALJ correctly found, this is not accurate.  Rather, the post-file review records reflect what the ALJ labels as "early remission," Tr. 25, 28, in that Plaintiff reports periods of no meth use but also repeatedly admits to providers that he was or had been using meth, or tested positive for meth or denied use of meth but refused to submit to a toxicology screen, as well as that, even when not using meth, he was using marijuana.[3]  Nevertheless, by comparison with the earlier set of records, as the ALJ correctly found, providers noted the reduction in meth use in the post-file review period and linked it to a material improvement in Plaintiff's symptoms as reflected in largely normal MSEs, including better engagement in therapy and treatment.[4]  The ALJ

---

[3] See, e.g., Tr. 503 (in August 2023, Plaintiff reported that he had stopped meth for a month and a half); Tr. 505 (in July 2023, "smokes marijuana daily"); Tr. 506 (in June 2023, "He reports he smokes marijuana when he can get it and also inhalants, Meth, if he has the money.  He is presently without money and not using anything, except marijuana."); Tr. 509 (in May 2023, Plaintiff admits using meth "at times"); Tr. 518-19 (in May 2023, "I started using again . . . admitting for past month he has been using crystal meth"; abnormal MSE observations); Tr. 515 (toxicology in March 2023 is positive for meth); Tr. 538-39 (in November 2023, adverse MSE observations made at appointment where Plaintiff claims he cannot submit to toxicology screen which provider notes is "not acceptable").

[4] See, e.g., Tr. 495-96 (Ms. Morin notes Plaintiff processing use of meth and loss of job he loved and hopes to return to society in recovery and stable; MSEs normal); Tr. 500 (Ms. Morin notes "greatly improved on how he is managing therapy . . . clearer [and] focused on future oriented discussions"; MSE normal); Tr. 514-18 (Nurse Pollard notes, "[r]ecently patient has improved, arriving and providing toxicology screens, seeing a therapist as encouraged"); Tr. 522-24 (Nurse Pollard notes, "reporting he is better, says he did not use any illicit drugs over the

accurately assessed this post-file-review evidence as consistent with findings of the non-examining expert psychologists in that it demonstrates that "when abstinent from methamphetamine use, the claimant's mental status improved significantly, and concentration was typically intact," despite sustained provider observation (consistent with the pre-file-review materials) of "[i]nsecure avoidant attachment pattern" "personality structure . . . organized at a borderline level [. . . and] a fragmented sense of self." Tr. 28 (citing, e.g., Tr. 495-98); see Tr. 23 ("the records that were submitted subsequent to these assessments were consistent with the records the psychologists had reviewed").

Importantly, the record available to the non-examining expert psychologists included treatment records for both Nurse Pollard and Ms. Morin; these experts relied on the Pollard/Morin records, as well as the balance of the record submitted, to find that, without substance use, Plaintiff would still be severely impaired but would retain the ability to work. As Plaintiff concedes on reply, his argument that the Morin records were not reviewed at all by either of the non-examining psychologists is simply wrong. ECF No. 14 at 1. In fact, both experts considered and performed an expert analysis of the Pollard notes, while the reconsideration phase expert psychologist, Dr. Olson, considered and performed an expert analysis of the Morin notes from March and April 2023. Tr. 67-71, 79-82. Also inaccurate is Plaintiff's contention that the expert psychologists were not aware of and did not analyze Ms. Morin's observations of insecure, disorganized attachment pattern and a fragmented sense of self. These observations are specifically referenced in Dr. Olson's reconsideration phase expert analysis. Tr. 79.

---

past month and he has been gaining weight, seeing his therapist regularly"; normal findings on MSE except eye contact only fair, restlessness, affect constricted and insight impaired).

9

Plaintiff's argument rests, therefore, on his correct contention that, post-file-review, both Nurse Pollard and Ms. Morin continued treating Plaintiff and that the MSEs and clinical observations in the post-file-review records were considered only by the ALJ, who made the common-sense finding that they are consistent with or more benign than the Morin/Pollard records that the expert psychologists did see. In so doing, the ALJ was not interpreting raw medical information that is inscrutable to a lay person – determinations based on an ALJ's review of normal mental status reports in treatment notes "are the province of the ALJ, and d[o] not require the ALJ to interpret raw medical data or conduct a layperson's interpretation of medical jargon." Michael D., 2019 WL 2537587, at *7. Indeed, Ms. Morin's post-file-review MSE observations are entirely normal despite her continued observation of the symptoms of bipolar disorder that also appear in her pre-file-review notes.

Having reviewed the entirety of these records, the Court finds that the ALJ did not err in making the common-sense determination that the clinical observations in the Morin records that Dr. Olson did not see are similar to or more benign than those that she did see. Similarly, the Court finds that the ALJ did not err in making the common-sense determination that the clinical observations in the Pollard records that neither Dr. Steadman-Wood nor Dr. Olson saw are similar to or more benign than those in the Pollard records that they did see. That is, none of these records calls into question "whether [these experts] would have rendered the same . . . opinions if they had all of the medical evidence." Kayla G. v. Kijakazi, C.A. No. 21-443PAS, 2022 WL 3368600, at *3 n.3 (D.R.I. Aug. 16, 2022) (internal quotation marks omitted). The Court further relies on the reality that there is no opinion contradicting these experts' findings. No source has opined that, without substance use, Plaintiff would still suffer from work-preclusive limitations. Accordingly, the Court finds no error in the ALJ's reliance on the

10

findings of the non-examining expert psychologists as substantial evidence to support the RFC. See Andrea T., 2020 WL 2115898, at *6.

>    2.    ALJ's Reliance on Daily Activities in Assessing Subjective Statements

The ALJ's credibility analysis includes the observation that "in the context of periods of sobriety," the "corresponding progress notes include documentation of the increased ability to independently engage in a wide range of activities of daily living." Tr. 27. Plaintiff challenges this finding because the portion of the decision that includes this sentence fails to specify the activities Plaintiff recovered the ability to perform when not using meth. ECF No. 11 at 13.

What the record reflects is that during the pre-onset period, Plaintiff was working but "frequently require[d] extended leave" due to minor injuries that occurred while he was "under the influence of drugs," with the medical recommendation to "return to work when possible as the time he is away is unstructured, causing him to sleep daily and wake at night." Tr. 426, 428, 433. Despite this recommendation, throughout the period in issue, as the ALJ noted, Plaintiff "stayed at home for the most part." Tr. 26. That is, during periods of reduced meth use, when Plaintiff's symptoms improved, the record reflects that he was "doing pretty well . . . [though] he has not been very active but he is still working on disability . . . staying up late into the night playing videogames and watching television, . . . us[ing] cannabis regularly." Tr. 460-61 (emphasis added). Towards the end of the period in issue, just before the ALJ hearing, Ms. Morin noted that Plaintiff "is home every day, does not drive, only goes to local stores for food items, . . . smoking marijuana with his medical card, . . . hoping to return to employment . . . and return to society in recovery and stable emotionally." Tr. 496; see Tr. 494 ("just smoking marijuana now, which calms him, and spends time on his computer doing things and reading

11

stuff"); Tr. 499-500 ("unable to get motivated . . . just smoking marijuana," though "greatly improved on how he is managing therapy").

The ALJ's decision specifically acknowledges this relative lack of activity even during periods of improvement in mental status due to reduced meth use. Tr. 25 (during late 2023, claimant was "sleeping too much and had difficulty leaving his house, . . . was groomed poorly, was lethargic and had difficulty getting up"). Nevertheless, during periods of reported sobriety from meth use, the ALJ also notes that Plaintiff "spent his day trying to do chores around the house," that he was "gaining weight . . . report[ing] improved abilities," that he was "more engaged," that he was "hoping to return to work," and that he was spending "time on the computer and reading." Tr. 26-28. Further, the Morin progress notes to which the ALJ refers in the sentence that Plaintiff has challenged contain support for the ALJ's finding of the "increased ability" to engage in activity. E.g., Tr. 494 ("spent Thanksgiving with his brother and family and will do the same for Xmas . . . used to just not sleep and do drugs . . . just smoking marijuana now . . . and spends time on his computer doing things and reading stuff"); Tr. 495 (procured and set up ice machine; "pleased with this project and discussed it was nice to be busy with something, and that he misses work"); Tr. 497 ("is on a better schedule at home, sleeping less"); Tr. 502 ("clean[ed] up some of the basement area"); Tr. 503 ("trying to get out and walk with the[] nice weather and was communicating more and clearly . . . talking about employment and what he could be[] searching for again, mostly cooking [i]s what he likes, but then computer work a possibility").

Mindful that the Court may not reweigh this evidence or substitute its own judgment for that of the Commissioner, Thomas P., 2022 WL 92651 at *8, the Court finds that the ALJ has marshaled enough substantial evidence to buttress her finding that the Morin progress notes

12

document Plaintiff's "increased <u>ability</u> to independently engage in a wide range of activities of daily living" even though Plaintiff may not yet have been actually performing a "wide range" of activities.  Tr. 27 (emphasis added).  Therefore, she did not err in including this proposition as part of the support for her decision to discount Plaintiff's subjective statements.

### B.    Challenge to ALJ's Step Five Determination

Plaintiff asks the Court to focus on the non-examining expert psychologists' suggestion that Plaintiff "may be anxious and distracted in a crowded work setting and will perform best in a low stimulus, non-pressured work environment."  Tr. 73, 84.  The ALJ's hypothetical to the VE did not mention crowds although it did include the limitation of only occasional interactions with coworkers and the public; it also did not mention "low stimulus . . . work environment" but did include the limitation to simple instructions/tasks and no time-pressure tasks.  Tr. 59-60.  Plaintiff argues that the ALJ's Step Five determination is tainted by her failure to include no "crowded work setting[s]" and "low stimulus" work environment in her questions to the VE.  ECF No. 11 at 15-16.  Plaintiff contends that this error is material at least as to the limitation to a "low stimulus work environment" in that the Court should interpret a limit to low stimulus work as conflating with the inability to perform jobs with moderate or higher "noise levels"[5] and the ALJ's three exemplar jobs (house/institutional cleaner and floor waxer) all feature "moderate" noise levels according to the DOT.

This argument fails because what the expert psychologists suggested in their narrative explanations are not RFC findings, which are based on the "most [a claimant] can . . . do despite [his] limitations."  <u>Katherine M. v. Kijakazi</u>, No. 1:22-CV-00195-NT, 2023 WL 2806460, at *2-

---

[5] Although Plaintiff cited no law to support this argument, the Court searched for cases in which a limitation restricting a claimant to a "low stimulus" work environment was conflated with a limitation on jobs with moderate noise limits as established in the DOT.  None were found.

3 (D. Me. Apr. 6, 2023) (internal quotation marks omitted) (no error in failure to include consulting expert suggestion that claimant would do better in jobs with limited interaction in RFC because it does not describe "the most the Plaintiff could still do despite her limitations"), adopted, 2023 WL 3122986 (D. Me. Apr. 27, 2023).  Thus, there was no need for the ALJ to include such suggestions in her hypothetical to the VE or in the RFC on which her decision is based.  Id. (citing Litwin v. Colvin, No. C15-1334-JLR-MAT, 2016 WL 487707, at *3 (W.D. Wash. Jan. 15, 2016) ("[T]he ALJ's RFC assessment need not address how a claimant would 'do best': RFC is the most, not the least, that a claimant can do."), adopted, 2016 WL 525488 (W.D. Wash. Feb. 7, 2016); Hines v. Comm'r of Soc. Sec., No. 3:20-cv-620, 2021 WL 1895011, at *8 (N.D. Ohio Feb. 25, 2021) ("[B]ecause an RFC is not an optimization measure, the ALJ had no duty to explain why she did not integrate into the RFC the state agency consultants' statement that [the claimant] would 'perform best' in a solitary environment without over the shoulder supervision."), adopted, 2021 WL 1571659 (N.D. Ohio Apr. 22, 2021)).

This argument also fails because Plaintiff was offered the opportunity to – and did – question the VE about the suitability of the exemplar jobs if additional limitations arguably reflected in the record were added to the hypothetical.  Yet Plaintiff asked no questions about whether these jobs (defined by the hypothetical as requiring low levels of social interaction and no time pressure) would expose Plaintiff to crowds beyond what he could tolerate or whether the "moderate" noise level (for example, caused by cleaning equipment) would expose Plaintiff to stimulus that he could not tolerate.  Tr. 62-63.  And with no cases establishing a *per se* disconnect between low stimulus work and "moderate" noise, n.5 *supra*, this is not a circumstance where there is a conflict between the VE's testimony and the DOT that was obvious enough that the ALJ should have picked up on it without such assistance.  In such

14

circumstance, the Court alternatively relies on the well-settled principle that a "claimant waives a claim of failure to identify and resolve a conflict between vocational expert testimony and the DOT unless he or she can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." Victoria D. v. Kijakazi, 1:20-cv-00266-GZS, 2021 WL 3633878, at *2 (D. Me. Aug. 17, 2021) (internal quotation marks omitted) (based on waiver, rejecting argument that claimant's RFC precluded work with excessive noise and VE did not adequately address noise when she identified exemplar jobs), adopted, 2021 WL 3924044 (D. Me. Sept. 1, 2021).  That is, the record lacks any persuasive evidence to suggest that the exemplar jobs are not compatible with the experts' RFC limitations, even if their narrative suggestions had been included.  See id. at *3.

Based on the foregoing, the ALJ's Step Five finding is affirmed.

## VI.    Conclusion

Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) is DENIED and the Commissioner's Motion to Affirm (ECF No. 13) is GRANTED.  The Clerk is directed to enter judgment in favor of Defendant.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 2, 2026